The STATE of Ohio, Appellee,

v.

COLLIER, Appellant. █

[Cite as *State v. Collier* (1998), 131 Ohio App.3d 530.]

Court of Appeals of Ohio,
Seventh District, Carroll County.

No. 684.

Decided Dec. 18, 1998.

*John T. Smiley*, Carroll County Prosecuting Attorney, and *Donald R. Burns, Jr.*, Assistant Prosecuting Attorney, for appellee.

*Bradley R. Iams*, for appellant.

GENE DONOFRIO, Presiding Judge.

Defendant-appellant, Charles Robert Collier, appeals a jury decision from the Carroll County Court of Common Pleas. Appellant was found guilty on two counts of theft in office in violation of R.C. 2921.41(A)(1).

The Lake Mohawk Property Owners' Association ("Lake Mohawk") is a corporation formed by the property owners of the Lake Mohawk subdivision in Carroll County, Ohio. Security concerns at Lake Mohawk were handled by a so-called "Constable's Office" headed by a chief constable.

In June 1992, appellant was hired by Lake Mohawk as a special constable pursuant to R.C. 1907.54.[1] In 1994, appellant was promoted to the position of chief constable and served in that position until he was indicted in January 1996. Pursuant to R.C. 1907.54 and 1907.55, members of Lake Mohawk applied annually to the Carroll County Court of Common Pleas to have appellant appointed as a "special constable."

In early 1995, appellant took an additional part-time job with the Jackson Township Police Department in Stark County. In the summer of 1995, appellant obtained a full-time job at the Regional Emergency Dispatch Center in Stark County ("RED Center"). The RED Center is a dispatching operation assisting local law enforcement.

---

1. R.C. 1907.54, appointment of special constables, provides:

    "Upon the written application of the director of administrative services or of three freeholders of the county in which a county court judge resides, the judge may appoint one or more electors of the county as special constables. In order to be eligible to serve as a special constable, an elector shall hold a valid certificate issued by the Ohio peace officer training commission.

    "The special constables shall guard and protect the property of this state, or the property of such freeholders and the property of this state under lease to such freeholders, designated in general terms in the application, from all unlawful acts, and, so far as necessary for that purpose, a special constable has the same authority and is subject to the same obligations as other constables."

In October 1996, the Ohio Bureau of Criminal Investigation ("BCI") commenced an investigation into possible irregularities involving the Lake Mohawk constable's office. In connection with that investigation, the BCI obtained appellant's timesheets from Lake Mohawk, the Jackson Township Police Department, and the RED Center. In comparing the records, the agents identified various inconsistencies and time overlaps.

On January 6, 1997, appellant was indicted on seventeen counts of theft in office in violation of R.C. 2921.41(A)(1). It was alleged that appellant was a public official or party official and that appellant used his office in committing thefts on seventeen separate dates from February 14, 1995 through February 14, 1996. It was alleged that appellant committed theft by deception by accepting compensation from two different entities for the same hours allegedly worked. Although the alleged offenses all predated the effective date of Am.Sub.S.B. No. 2 (146 Ohio Laws, Part IV, 7136, effective July 1, 1996), each offense was initially identified in the indictment as a felony of the fifth degree. (Am.Sub.S.B. No. 2 designated these offenses as felonies of the fifth degree. R.C. 2921.41[B], as amended.) On February 5, 1997, appellee, the state of Ohio, moved the court to redesignate all counts in the indictment as felonies of the third degree. Appellee claimed that since the offenses predated the effective date of Am.Sub.S.B. No. 2, they should be felonies of the third degree. Appellee's motion was granted.

On February 20, 1997, appellant moved the court to strike the language of the indictment that alleged that appellant was a public official or party official. Following a hearing, the court denied appellant's motion.

On June 5, 1997, appellee moved the court to dismiss Count 8 of the indictment. The motion was granted without objection or hearing.

On June 9, 1997, a jury trial commenced. On June 11, 1997, the jury returned a guilty verdict as to Count 1, involving time worked on February 14, 1995, and Count 6, involving time worked on March 31, 1995, and not guilty verdicts on the remaining counts. The total number of hours in conflict on those two days was eight hours. The total amount of money involved was less than $100 (appellant was paid approximately $9 an hour as a special constable).

On June 28, 1997, the court sentenced appellant to consecutive two-year terms of imprisonment and imposed a $5,000 fine, plus court costs. Portions of appellant's sentence were suspended and appellant was placed on probation for five years, conditioned upon his incarceration for not less than four months at the Eastern Ohio Correctional Facility in Wintersville. Appellant was also ordered to complete two hundred hours of community service, pay $500 of the fine, and to otherwise obey the rules and regulations of probation.

On June 28, 1997, appellant timely filed his notice of appeal.

Due to the manner in which we dispose of appellant's third assignment of error, appellant's first, second, fourth, fifth, and sixth assignments of error are rendered moot. See App.R. 12(A)(1)(c).

In his third assignment of error, appellant argues:

"The trial court erred in failing to acquit appellant of the theft in office charges in the absence of evidence establishing that appellant was a public official."

Appellant argues that he was hired and paid by a private business to perform security work and that his day-to-day activities were directed by his private employers and not a public agency. Appellant states that he was accused of being a public official. Appellant goes on to argue that, by statutory definition, he is not a public official, and therefore, appellant concludes, the trial court should have granted an acquittal.

Appellee contends that pursuant to R.C. 1907.54, "a special constable has the same authority and is subject to the same obligations as other constables." Appellee contends that law enforcement officers are public officials, that the definition of law enforcement officers includes constables, and that the definition of "law enforcement officer" does not restrict the application of the word "constable" to any particular type of constable. Therefore, appellee reasons that appellant was a public official. Appellee states that as a special constable, appellant made arrests, carried a gun, and wore a badge and uniform, and therefore was clearly in a position of public trust and authority. Appellee contends that appellant's position is exactly the type of position the General Assembly was addressing with R.C. 2921.41.

R.C. 2921.41 states:

"(A) No public official or party official shall commit any theft offense, as defined in division (K) of section 2913.01 of the Revised Code, when either of the following applies:

"(1) The offender uses the offender's office in aid of committing the offense or permits or assents to its use in aid of committing the offense;

"(2) The property or service involved is owned by this state, any other state, the United States, a county, a municipal corporation, a township, or any political subdivision, department, or agency of any of them, is owned by a political party, or is part of a political campaign fund."

In the bill of particulars filed February 5, 1997, appellee stated, as to Counts 1 and 6, the following:

"The State will further prove that the defendant [appellant] was a *public official* and used his office in aid of committing the offense * * *." (Emphasis added.)

R.C. 2921.01(A) defines a "public official":

" 'Public official' means any elected or appointed officer, or employee, or agent of the state or any political subdivision, whether in a temporary or permanent capacity, and includes, but is not limited to, legislators, judges, and law enforcement officers."

R.C. 2901.01(A)(11) states:

"(11) 'Law enforcement officer' means any of the following:

"(a) A sheriff, deputy sheriff, *constable*, police officer of a township or joint township police district, marshal, deputy marshal, municipal police officer, member of a police force employed by a metropolitan housing authority under division (D) of section 3735.31 of the Revised Code, or state highway patrol trooper;

"(b) An officer, agent, or employee of the state or any of its agencies, instrumentalities, or political subdivisions, upon whom, by statute, a duty to conserve the peace or to enforce all or certain laws is imposed and the authority to arrest violators is conferred, within the limits of that statutory duty and authority." (Emphasis added.)

Constables are appointed pursuant to R.C. 509.01, which provides:

"(B) [T]he board of township trustees may designate any qualified persons as police constables and may provide them with the automobiles, communication systems, uniforms, and police equipment that the board considers necessary. * * * [P]olice constables designated under this division, who have been awarded a certificate attesting to the satisfactory completion of an approved state, county, or municipal police basic training program * * * may be removed or suspended only under the conditions and by the procedures in sections 505.491 to 505.495 of the Revised Code. Any other police constable shall serve at the pleasure of the township trustees. * * * The board may pay each police constable, from the general funds of the township, the compensation that the board by resolution prescribes for the time actually spent in keeping the peace, protecting property, and performing duties as a police constable, including duties as an ex officio deputy bailiff of a municipal court pursuant to section 1901.32 of the Revised Code and duties as a ministerial officer of a county court. The police constable shall not be paid fees in addition to the compensation allowed by the board for services rendered as a police constable, including services as an ex officio deputy bailiff of a municipal court pursuant to section 1901.32 of the Revised Code and as a ministerial officer of a county court. All constable fees provided for by section 509.15 of the Revised Code, if due for services rendered while the police constable performing those services is being compensated as a police constable for his performance, shall be paid into the general fund of the township."

Appellant was appointed a special constable pursuant to R.C. 1907.54, as previously noted.

R.C. 2901.04(A) provides a general rule of construction for interpreting criminal statutes in Ohio. R.C. 2901.04(A) states:

"Sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."

In the bill of particulars, appellant was alleged to be a "public official." R.C. 2921.01(A), which defines "public official," specifically includes "law enforcement officers." R.C. 2901.01(A)(11), which defines a "law enforcement officer," specifically includes "constables," but makes no mention of "special constables." Constables and special constables are two separate and distinct positions. A constable is designated pursuant to R.C. 509.01, while a special constables is appointed pursuant to R.C. 1907.54.

Law enforcement officers are clearly public officials. However, special constables are omitted from the definition of law enforcement officers, while constables are not. This omission leads us to the conclusion that special constables are not in the same classification as other law enforcement officers and, thus, are not "public officials."

In addition, appellee claims that appellant was wrongfully receiving compensation from the Lake Mohawk Property Owners' Association while working elsewhere. This association is a private corporation formed by the property owners of the Lake Mohawk subdivision in Carroll County, Ohio. To be a public official, one must be an elected or appointed officer, or employee, or agent *of the state or any political subdivision* thereof. R.C. 2921.01(A). Appellant was employed with, and inappropriately compensated by, a private entity: the Lake Mohawk Property Owners' Association. Thus, by statutory definition, appellant would not be a public official. Appellant was not convicted of receiving compensation from a public entity, the Jackson Township Police Department, while working elsewhere. If this were the case, our opinion would be otherwise.

Appellant's third assignment of error has merit.

The decision of the trial court is hereby reversed, and appellant's convictions for theft in office are hereby vacated. It is so ordered.

*Judgment reversed*
*and convictions vacated.*

VUKOVICH, J., concurs.

WAITE, J., dissents.

WAITE, Judge, dissenting.

I must strongly dissent from the majority here. Appellant is playing merely a game of semantics. Appellant says that the statute that defines "law enforcement officer" (and thus designates who is a "public official"), R.C. 2901.01(A)(11)(a), lists only "constable" and not "special constable" and thus appellant as a "special constable" does not fall into the designation of a public official. This argument is severely flawed. While R.C. 509.01 is entitled simply "Constables; compensation," throughout this entire section constables are referred to as "police constables" in every instance. Never once are they simply referred to as "constable" except in the title.

In contrast, R.C. 1907.54 refers to "special constables," but clearly and unequivocally states therein that "a special constable has the same authority and is subject to the same obligations as other constables." Thus, for all intents and purposes (including criminal indictment), "special constables" and "police constables" are one and the same, even for purposes of R.C. 2901.01(A)(11)(a), which defines just who is a "law enforcement officer" and thus who is a "public official." To say that this section refers only to the police constable of R.C. 509.01 and not to the special constable of R.C. 1907.54 flies in the face of the laws of construction and the specific language of both statutory sections. Special constables, according to the exact language of R.C. 1907.54, have exactly the same powers as police constables, although differently *selected* to serve in that capacity. The selection process alone differentiates them. Further, R.C. 2901.01(A)(11)(a) merely generically designates that a "constable" (not either a "police constable" or "special constable") is a law enforcement officer, and we know that law enforcement officers are public officials pursuant to R.C. 2921.01(A).

Also, appellant is attempting to focus only on his actions as a special constable. The bill of particulars states clearly at counts one through eight that appellant was being indicted for theft by deception, theft in office, "by taking compensation as a constable for Lake Mohawk and compensation from the Jackson Township Police Department for the same hours." Counts nine through seventeen alleged that while a constable appellant also received compensation for hours worked at Red Center. Appellant was convicted of counts one and six. Thus, appellant was convicted of receiving money as a special constable in charge of the peace and good order of the homeowners' association, while at the same time he received money as a police officer for the Jackson Township Police Department. In other words, he was on duty as a police officer and earning his police officer's salary at the same time and for the same hours of work that he was collecting his salary as a constable. Appellant chooses to keep the focus on his job as a constable and to play his (apparently successful) game of semantics because when you shift the focus you realize that he was paid for hours of work as a police officer for the

township when he was also moonlighting as a constable. There can be no question that, regardless of his actions as a constable, he was properly indicted for theft in office due to his unique dual role here.

I also find that appellant's other five assignments of error are equally specious. I would affirm the judgment of the trial court in all respects.